IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION

**BRENDA K. ALLGOOD**                                                      **PLAINTIFFS**

**v.**                                **CIVIL ACTION # 2:07cv98-KS-MTP**

**METROPOLITAN LIFE**
**INSURANCE COMPANY**                                       **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

This cause is before the Court on the motion for summary judgment [# 21] filed by the Defendant.  Because the clear and unambiguous terms of the insurance contract stated that the policy would cease on divorce, the former-spouse of the deceased is not entitled to benefits under the subject insurance policy.  Because the Plaintiff has failed to raise any genuine issue of material fact, the motion for summary judgment should be **granted**.

## I. FACTUAL BACKGROUND

This case centers on a mistaken belief about an insurance contract.  After her ex-husband died, the former spouse of the decedent made a claim on the insurance policy she carried on his life.  Unknown to her, a contract provision caused the policy to lapse when she divorced him less than six months prior to his death.  The former spouse has now brought suit against the insurer for benefits under the policy, alleging that she was unaware of the term and that it illegally violates her reasonable expectations as the insured.

In January 1993, Brenda Allgood purchased a life insurance policy offered as a benefit by her employer, Sears.  At that time, Sears employees could purchase insurance from Metropolitan

1

Life Insurance Company ("MetLife") for themselves and their families. Brenda purchased a policy on her life and a separate policy on the life of her husband, Charles Allgood, from MetLife. The effective date on both policies was January 1, 1997.

The policy Brenda purchased included a "termination of marriage" clause relevant to this action. The clause stated that "if your marriage to the covered Person ends while the covered person is still covered for an amount of term insurance...coverage under this certificate will end." *See* Def.'s Ex. 4 at 2 (Feb. 14, 2008). There is no evidence that Ms. Allgood was ever given specific notice of this clause outside the context of the main policy document.

Ms. Allgood and her husband, Charles divorced on April 27, 2006. Ms. Allgood continued making quarterly payments to MetLife, and the company continued crediting those payments to her account. She never contacted MetLife to inform them about the divorce, and no MetLife representative spoke to her after the divorce to inquire about renewing the policy on her former spouse. The ex-spouses had an amicable relationship after divorce, residing near one-another and sharing their parenting duties.

Charles Allgood died on October 16, 2006. Following his death, Brenda made a claim with MetLife on the policy she owned that insured Mr. Allgood's life. Upon receipt of his certificate of death, MetLife denied Ms. Allgood's claim based on the termination of marriage clause in the contract. Because the certificate of death revealed that Charles was divorced, MetLife refused to pay any benefits to Ms. Allgood.

Ms. Allgood filed suit against MetLife in the Circuit Court of Lamar County in May of 2007. After removal, MetLife moved for summary judgment on all of Brenda's claims. In response, Brenda has admitted that "the language of the certificate, if strictly applied, defeats her

claim for benefits." *See* Pl.'s Res. Br. at 3 (Feb. 28, 2008).  She instead argues that because the contract violated her "reasonable expectations" as a beneficiary of the policy, Mississippi law allows her to recover.

## II. STANDARD OF REVIEW

Summary judgment is warranted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  To support a motion for summary judgment, "the moving party ... [has] the burden of showing the absence of a genuine issue as to any material fact." *Burleson v. Tex. Dept. of Criminal Justice,* 393 F.3d 577, 589 (5th Cir 2004).  Material facts are those that "could affect the outcome of the action." *Weeks Marine, Inc. v. Fireman's Fund Ins. Co.*, 340 F.3d 233, 235 (5th Cir. 2003) (internal citations omitted).  Disputes about material facts are genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party" on that issue. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In evaluating a motion for summary judgment, the court views all evidence "in the light most favorable to the non-moving party" and "draw[s] all reasonable inferences in its favor." *Breen v. Texas A&M Univ*., 485 F.3d 325, 331 (5th Cir. 2007).  If the movant satisfies its initial burden, then the burden shifts back to the nonmoving party to produce evidence indicating that a genuine issue of material fact exists for each essential element of its case. *Rivera v. Houston Indep. Sch. Dist.*, 349 F.3d 244, 246-47 (5th Cir. 2003).  The nonmovant is not entitled to merely rest on her pleadings, but must set forth "specific facts showing there is a genuine issue for trial."

*DirecTV, Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005).  If the nonmovant responds and still "no reasonable juror could find for the nonmovant, summary judgment will be granted." *Caboni v. General Motors Corp.*, 278 F.3d 448, 451 (5th Cir. 2002).

When an insurance contract is clear and unambiguous, the court is bound to construe it as written. *Lowery v. Guaranty Bank & Trust Co.*, 592 So. 2d 79, 82 (Miss. 1991).  Insureds themselves have an affirmative duty to read the terms and conditions of their policies. *Titan Indem. Co. v. City of Brandon, Miss.*, 27 F. Supp. 2d 693, 697 (S.D. Miss. 1997).  An insured cannot avoid the terms of the contract "merely because [they] failed to read it." *Oglesbee v. Nat'l Sec. Fire & Cas. Co.*, 788 F. Supp. 909, 913 (S.D Miss. 1992).

### III.  APPLICATION AND ANALYSIS

Ms. Allgood alleges MetLife's decision to enforce the termination of marriage clause and to deny her benefits violates her reasonable expectations as the insured.  She argues that "the defendant had an obligation to advise its policy holders that (1) divorce would terminate policy benefits and (2) in that event, alternate coverage could be issued or otherwise obtained." *See* Pl.'s Res. Br. at 6 (Feb. 28, 2008).

Ms. Allgood cites three cases to argue that the language of the policy should not be strictly enforced.  In *Pitts*, the Fifth Circuit upheld a trial court's ruling that an insured who had "a reasonable expectation of continued benefits" could retain coverage when an insurer tried to withdraw it. *Pitts v. American Security Life Ins. Co.*, 931 F.2d 351, 356 (5th Cir. 1991).  But unlike this action, the *Pitts* case involved an insurer with knowledge that the insureds were not

eligible for coverage, but continued accepting premiums before acting to deny their claim. *Id.* The appeals focused on "the unilateral action of the insurer in failing to raise at the outset a known defense to the claim" when it accepted premiums from, yet attempted to deny benefits for, the insured. *Id.* Because the insurer waived the right to cancel the policy when it knew the insured was ineligible, it could not cancel after the insured suffered a compensable injury. *Id.* at 357.

Although MetLife continued accepting premiums from Ms. Allgood, there is no evidence that the insurer knew that the couple had divorced. Because they were unaware of the divorce, MetLife could not know that the termination of marriage clause was triggered and that coverage on Mr. Allgood's life had ceased. Therefore, accepting premiums did not act to waive the conditions of coverage, and the requirement that the owner or insured take particular steps to retain coverage in the event of divorce remained in effect.

The other two cases cited by Ms. Allgood are slightly closer to the mark. In *Brown* and *Kelley*, the Mississippi Supreme Court refused to permit cancellations of coverage when the insureds had suffered a significant change in circumstances that would make them uninsurable. The *Kelley* Court noted that "[c]onsiderations of public policy" prevent an insurer from exercising an absolute right to cancel life insurance policy once it became aware of an insured's heart attack. *Gulf Guaranty Life Ins. Co. v. Kelley*, 389 So. 2d 920, 922 (Miss. 1980). Likewise in *Brown*, the Court refused to allow an insurer to deny benefits to an insured when her employer cancelled the group insurance policy while she was pregnant, leaving her unable to obtain substitute coverage. *Brown v. Blue Cross & Blue Shield of Miss.*, 427 So. 2d 139, 141 (Miss. 1983). The Court determined it "cannot uphold such a cancellation on the grounds of public

policy." *Id.*

But in the instant case, there was no absolute right to cancel the policy–the policy ceased automatically. *See* Def.'s Ex. 4 at 2 (Feb. 14, 2008). And unlike the insured in *Kelly*, MetLife was not informed that the couple had divorced until Ms. Allgood made a claim following her former husband's death. Were she to have informed MetLife about the divorce while he was still living, there is no indication that Mr. Allgood would have been prevented from obtaining life insurance from MetLife or any other insurer. Although this places a burden on the insured to meticulously review their policy contracts, that burden is created by the unambiguous terms of the contract and supported by unequivocal state law.

Facing the precise issue presented in this case, a federal district court in Pennsylvania held that the former spouse was not entitled to benefits. *Licon v. Metro. Life Ins. Co.*, 2007 WL 3405696 (E.D. Pa. Sep. 13, 2007). In *Licon*, the former spouse of an insured brought suit against MetLife in exactly the same circumstances–she had divorced the deceased and failed to notify MetLife or make arrangements to continue coverage. *Id*. at *1. Despite the fact that MetLife had continued to collect premiums from the former spouse, the Pennsylvania district court denied the former spouse her expected benefits. *Id.* The court held that "Licon's expectation was not reasonable because it was contrary to the unambiguous terms of the policy itself and because Licon had withheld from MetLife the fact that she and her husband were now divorced." *Id*. at *2. The court concluded that "because the policy stated that coverage terminated once the Licons were divorced, MetLife did not breach its contract with Margaret Licon by failing to pay her claim." *Id.*

## IV. CONCLUSION

Brenda Allgood suffered twice in the course of six months–first from the untimely death of her former spouse, and again from her insurer's refusal to pay her benefits under the subject policy. But when the terms of a contract are clear, this Court like all others must apply them as written. Even though Ms. Allgood reasonably expected to receive benefits under the policy, her expectations are trumped by the unambiguous language that required her to act in the event of a divorce. Because she did not renew coverage for her former spouse, her rights as a beneficiary lapsed, and cannot be revived through this lawsuit.

IT IS, THEREFORE, ORDERED AND ADJUDGED that the motion for summary judgment [# 21] is **granted**.

SO ORDERED AND ADJUDGED on this, the 18th day of March, 2008.

*s/Keith Starrett*
United States District Judge